UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA


SYNERGY MANAGEMENT, LLC              CIVIL ACTION

v.                                   NO. 07-5892 - KDE - JCW

LEGO JURIS A/S                       JUDGE ENGELHARDT "N"

                                     MAG. JUDGE WILKINSON (2)

## ANSWER AND COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff LEGO Juris A/S ("Defendant"), by its undersigned

attorneys, for its Answer to the Complaint herein alleges as follows:

### RESPONSE TO NATURE OF THE COMPLAINT

Denies the allegations of the first unnumbered Paragraph, except admits that Plaintiff

purports to seek a declaratory judgment regarding rights in and to the domain name

<legotable.com>.

### RESPONSE TO JURISDICTION AND VENUE

1.       Denies the allegations of Paragraph 1 of the Complaint, except admits that

Plaintiff purports to seek a declaration and judgment under 28 U.S.C. §§ 2201(a) and 2202 and

purports that this court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331

and 1338(a).  To the extent that Paragraph 1 of the Complaint asserts a legal conclusion, no

response is necessary.

2.       Denies the allegations of the first sentence of Paragraph 2 of the Complaint,

except admits that Defendant filed a complaint with the World Intellectual Property Organization

1

("WIPO") pursuant to the Uniform Dispute Resolution Policy styled *LEGO Juris A/S v. Synergy Management et al.*, No. D2007-1028 (WIPO Aug. 31, 2007).  Denies knowledge and information sufficient to form a belief as to the truth of the allegations of the second sentence of Paragraph 2 of the Complaint.

3.      Denies the allegations of Paragraph 3 of the Complaint.

## RESPONSE TO THE PARTIES

4.      Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint, except admits that Plaintiff operates a website at www.legotable.com.

5.      Denies the allegations of Paragraph 5 of the Complaint, except admits that Defendant has a principal place of business at Koldingvej 2, 7190 Billund, Denmark.

## RESPONSE TO FACTUAL BACKGROUND

6.      Denies that Plaintiff is an authorized distributor of LEGO and DUPLO products, and otherwise denies knowledge and information sufficient to form a belief as to the truth of the remaining allegations of the first sentence of Paragraph 6 of the Complaint.  Denies knowledge and information sufficient to form a belief as to the truth of the allegation of the second sentence of Paragraph 6 of the Complaint.  Denies the allegations of the third sentence of the Paragraph 6 of the Complaint, except admits that Defendant operates a website at www.lego.com.

7.      Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Complaint.

8.      Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint.

{N1770545.1}

9.      Denies the allegations of Paragraph 9 of the Complaint, except admits that Defendant sent a letter dated June 18, 2003 to Plaintiff concerning the <legotable.com> domain name and associated website and avers that the letter speaks for itself.

10.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint.

11.     Denies the allegations of Paragraph 11 of the Complaint.

12.     Denies the allegations of Paragraph 12 of the Complaint, except admits that Defendant sent a letter dated April 18, 2005 to Plaintiff, avers that the letter speaks for itself, admits that Plaintiff thereafter sent an email to Defendant, and avers that that email speaks for itself.

13.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint.

14.     Denies the allegations of Paragraph 14 of the Complaint.

15.     Denies the allegations of Paragraph 15 of the Complaint.

16.     Denies the allegations of Paragraph 16 of the Complaint, except admits that it sent letters to Plaintiff concerning Plaintiff's inappropriate registration and use of the <legotable.com> domain name, and avers that the letters speak for themselves, and admits that it filed a Complaint against Plaintiff in accordance with WIPO's Uniform Domain Name Dispute Resolution Policy (the "Policy") on or about July 13, 2007, and avers that that Complaint speaks for itself.

17.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Complaint.

{N1770545.1}

18.     Admits the allegations of Paragraph 18 of the Complaint.

19.     Denies the allegations of Paragraph 19 of the Complaint.

20.     Denies the allegations of Paragraph 20 of the Complaint.

21.     Denies the allegations of Paragraph 21 of the Complaint.

22.     Denies the allegations of Paragraph 22 of the Complaint.

23.     Denies the allegations of Paragraph 23 of the Complaint.

### RESPONSE TO THE ADMINISTRATIVE PROCEEDING

24.     Admits the allegations of Paragraph 24 of the Complaint.

25.     Denies the allegations of Paragraph 25 of the Complaint, except admits that the WIPO Decision ordered the Domain Name be transferred to Defendant, and refers to the Policy for its content.

26.     Paragraph 26 of the Complaint states a legal conclusion to which no response is necessary.

### RESPONSE TO CLAIM FOR DECLARATORY RELIEF

27.     Repeats and realleges paragraphs 1 through 26 above as if fully set forth herein.

28.     Denies the allegations of Paragraph 28 of the Complaint, except admits that Plaintiff makes play tables for use with LEGO and DUPLO building blocks.

29.     Denies the allegations of Paragraph 29 of the Complaint.

30.     Admits the allegations of Paragraph 30 of the Complaint.

31.     Refers to the Policy for its content.  To the extent that Paragraph 31 of the Complaint asserts a legal conclusion, no response is necessary.

32.     Admits the allegations of Paragraph 32 of the Complaint.

{N1770545.1}

33.     Denies the allegations of Paragraph 33 of the Complaint, except admits that Plaintiff purports to seek a declaration and judgment concerning rights in and to the domain name <legotable.com>.

### FIRST AFFIRMATIVE DEFENSE

34.     Plaintiff has failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

35.     Defendant is the owner of all right and title in and to the trademark LEGO in the United States, and has not authorized Defendant to use the mark as part of the domain name <legotable.com>.

### THIRD AFFIRMATIVE DEFENSE

36.     Plaintiff's registration and use of the domain name <legotable.com> is not fair use under Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4).

### FOURTH AFFIRMATIVE DEFENSE

37.     Plaintiff's registration and use of the domain name <legotable.com> is not nominative fair use.

### FIFTH AFFIRMATIVE DEFENSE

38.     Plaintiff is guilty of unclean hands and therefore is not entitled to the relief sought.

### SIXTH AFFIRMATIVE DEFENSE

39.     Because the various paragraphs of Plaintiff's Complaint do not comply with Federal Rule of Civil Procedure 8(a) and (e), Defendant is not required to separately admit or deny each averment therein.

FOR THESE REASONS, Defendant prays that the Court dismiss all of Plaintiff's claims

{N1770545.1}

and find for Defendant on all counts, and that Defendant be awarded its costs, including reasonable attorneys' fees, and such other further relief as this Court deems just and proper.

## COUNTERCLAIMS

Counterclaim Plaintiff LEGO Juris A/S ("LEGO Juris"), by its undersigned attorneys, as and for its counterclaim against Counterclaim-Defendant Synergy Management, LLC ("Synergy"), alleges as follows:

## NATURE OF THE COUNTERCLAIMS

1.      LEGO Juris, through its licensees (LEGO Juris A/S and its licensees, collectively, "the LEGO Group"), is one of the world's most well-known manufacturers of children's toys and, in particular, construction toys featuring plastic building blocks or bricks sold under the LEGO brand.  Generations of children throughout the world have grown up playing with LEGO toy sets, and LEGO bricks have long been a mainstay of home and commercial play spaces. Virtually every parent and child in the United States, and likely throughout the world, is familiar with the LEGO name and mark, and with LEGO products thereby identified.

2.      This case concerns the infringement of LEGO Juris's world-famous LEGO trademark and its DUPLO trademark.  LEGO Juris brings this action to stop Synergy from using LEGO Juris's famous LEGO trademark and DUPLO trademark in connection with the website <www.legotable.com>.  Synergy's conduct is threatening irreparable harm to LEGO Juris, its valuable trademarks, and its hard-earned reputation.

3.      LEGO Juris asserts claims against Synergy for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation

{N1770545.1}

of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and for substantial and related claims under Louisiana state law.

4.      LEGO Juris seeks permanent injunctive relief, re-transfer of the domain name <legotable.com>, recovery of up to three times the damages sustained by LEGO Juris, Synergy's ill-gotten profits, statutory damages, attorneys' fees, and such further relief as the Court deems just and proper.

**PARTIES**

5.      Counterclaim Plaintiff LEGO Juris is a limited liability company organized and existing under the laws of Denmark with a principal place of business at Koldingvej 2, 7190, Billund, Denmark.

6.      Upon information and belief, Counterclaim Defendant Synergy is a corporation organized and existing under the laws of Louisiana with a principal place of business in Metairie, Louisiana.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

{N1770545.1}

8.      This Court has personal jurisdiction over Synergy because Synergy continuously and systematically conducts, transacts and solicits business in this district and Synergy resides or is otherwise located in this district.

9.      Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because Synergy resides in this district, because Synergy is subject to personal jurisdiction in this district, and because a substantial portion of the events at issue have arisen and will arise in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      <u>LEGO Juris's Business and Marks</u>

10.     For more than 75 years, the LEGO Group has used the LEGO trademark in connection with the famous LEGO brand of construction toys and other LEGO branded products. The LEGO brand has become one of the most famous and respected trademarks associated with toys in the world, is synonymous with the LEGO Group, and serves to designate exclusively the LEGO Group's goods.

11.     Although the LEGO Group is perhaps best known for its building blocks and construction sets, the LEGO Group over the decades has expanded its use of the LEGO trademark to, *inter alia*, apparel and accessories, bags, household accessories (including but not limited to play tables), books, computer hardware and software, and videos.

12.     The LEGO Group's products bearing the LEGO mark have been distributed worldwide, including throughout the United States, for decades.  The LEGO Group's products bearing the LEGO mark are sold in thousands  of retail outlets throughout the United States, and

sales of such products in the United States have exceeded $1 billion over the past ten years. LEGO products are renowned for their high quality and are identified and recognized by prominent LEGO markings.

13.     The LEGO mark is featured on products, packaging, inserts, in-store displays, advertising and promotional materials. The LEGO Group spends millions of dollars annually on U.S. advertising featuring the LEGO mark.

14.     As a result of the extensive advertising of products under the LEGO mark, the decades-long sale of LEGO products in thousands of retail outlets throughout the United States, and the renown that LEGO products have achieved, building blocks, construction sets and other goods bearing the LEGO mark have been and are now recognized by consumers of all ages and demographics as originating from a single source, the LEGO Group.

15.     The LEGO mark has been recognized as a famous brand.  For example, *The World's Greatest Brands*, published by MacMillan Business in 1996, lists LEGO as one of the most famous trademarks and brands in the world.  *Famous Brands*, published by Markgraaf BV in 1985, likewise names LEGO as a top world brand.  The Trademark Trial and Appeal Board of the United States Patent and Trademark Office held that LEGO is  "one of the most famous toy marks in the United States."  *Interlego AG v. Abrams/Gentile Entertainment Inc.*, 63 U.S.P.Q. 2d 1862 (T.T.A.B. 2002)

16.     LEGO Juris has registered its LEGO trademark in more than twenty-five countries worldwide, and owns numerous U.S. federal trademark registrations containing the term LEGO (the "LEGO Registrations"), including, but not limited to, the following registrations:

9

| MARK | REG. NO. | CLASS AND GOODS/SERVICES | |
|---|---|---|---|
| LEGO | 1,018,875 | Class 28: | Toy building blocks and connecting links for the same, sold separately and as kits for construction of toy houses, buildings, household furnishings, robots, doll figures and vehicular toys |
| LEGO & Design | 1,026,871 | Class 28: | Toy building blocks and connecting links for the same, sold separately and as kits for construction of toy houses, buildings, household furnishings, robots, doll figures and vehicular toys |
| LEGO | 1,248,936 | Class 16: | Series of books and number, symbol and letter blocks for instructional use |
| | | Class 20: | Storage cases, play tables with chairs attached and including a storage box |
| | | Class 22: | Storage bags made of cloth |
| | | Class 25: | T-shirts |
| LEGO | 1,535,046 | Class 9: | Computer peripherals, computer programs and plastic building units, sold as a unit for teaching principles of science, design, mathematics and engineering |
| LEGO | 1,563,848 | Class 41: | Entertainment services; namely providing exhibitions of models of famous structures made of toy building elements, conducting model building contest and organizing clubs featuring the building of models |
| | | Class 42: | Retail mail order services in the field of toy building sets |
| LEGO | 2,189,528 | Class 9: | Computer game software |

{N1770545.1}

| MARK | REG. NO. | CLASS AND GOODS/SERVICES | |
|---|---|---|---|
| LEGO & Design | 2,060,284 | Class 6: | Key rings of metal |
| | | Class 9: | Educational computer programs used for teaching mathematics, science and technology and for use in the computer-assisted design of toy models and structures, etc. |
| | | Class 14: | Watches; clocks; jewelry; ornamental pins; ornamental lapel pins |
| | | Class 16: | Books, pamphlets; maps; playing cards; postcards, posters, photographs, calendars; pens and pencils, etc. |
| | | Class 18: | Hand bags, shoulder bags, duffel bags, school bags and satchels, rucksacks, purses, wallets |
| | | Class 20: | Play tables; storage shelves; non-metallic storage bins |
| | | Class 21: | Lunch boxes |
| | | Class 25: | Clothing for men, women, children and babies, namely, T-shirts, sweatshirts and headwear |
| | | Class 28: | Plush toys, construction toys and blocks; toy figures; toy furniture; base plates and simulated road plates for construction toys; toy vehicles; etc. |
| | | Class 41: | Theme park and amusement park services; etc. |
| | | Class 42: | Restaurant, café, cafeteria, snack bar and fast food stand services; retail toy, gift and souvenir stores services; child care centers; etc. |

Printouts from the U.S. Patent and Trademark Office database reflecting the LEGO Registrations are attached hereto as <u>Exhibit A</u>.

17.     All of the LEGO Registrations are valid, subsisting, and in full force and effect. Moreover, several of the LEGO Registrations are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of LEGO Juris's ownership of the marks and of its exclusive right to use the mark in commerce on or in connection with the goods and services identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

{N1770545.1}

18.     The LEGO Group also owns more than 200 domain names containing the mark LEGO, including <lego.com>, <legoblock.com>, <legostore.com>, <legoland.com>, and many others.  Exhibit B hereto contains a list of all of the domain names owned by the LEGO Group incorporating the famous LEGO mark.

19.     Because of the LEGO Group's exclusive and extensive use of the LEGO mark, the mark has acquired enormous value and has become extremely well known to the consuming public and trade as identifying and distinguishing the LEGO Group exclusively and uniquely as the source of products available under the mark.  Due to the worldwide public acceptance, overwhelming fame and great recognition of products bearing or sold under the LEGO mark, the mark has come to represent an enormous goodwill of the LEGO Group and has caused merchandise associated with the mark to be in great demand.

20.     Due to the extensive advertising and sales of LEGO products and its wide popularity, the LEGO mark is famous and the purchasing public immediately and exclusively identifies the LEGO mark with the LEGO Group.

21.     In addition to its LEGO mark, LEGO Juris also is the owner of all right and title in and to the mark DUPLO for construction toys and related products.  Introduced in the 1960s, the LEGO Group's DUPLO blocks are created with the youngest consumers in mind:  they are twice as wide, high and long as ordinary LEGO bricks, and therefore easier for the youngest hands to manipulate.

22.     The LEGO Group's products bearing the DUPLO mark have been distributed in interstate commerce throughout the United States, including in this judicial district, for decades. DUPLO products are sold in thousands of retail outlets throughout the United States, and sales of

12

such products in the United States have been in the millions over the past ten years.  DUPLO products, like LEGO products, are renowned for their high quality.

23.     The DUPLO mark is featured on products, packaging, inserts, in-store displays, advertising and promotional materials.  The LEGO Group spends thousands of dollars annually on U.S. advertising featuring the DUPLO mark.

24.     As a result of the extensive advertising of products under the DUPLO mark, the decades-long sale of DUPLO products in thousands of retail outlets throughout the United States, and the renown that DUPLO products have achieved, building blocks, construction sets and other goods bearing the DUPLO mark have been and are now recognized by consumers of all ages and demographics as originating from a single source, the LEGO Group.

25.     LEGO Juris is the owner of all rights in and to two federal registrations for the DUPLO mark for toys (the "DUPLO Registrations") as follows:

| MARK | REG. NO. | REG. DATE | CLASS AND GOODS/SERVICES |
|------|----------|-----------|--------------------------|
| DUPLO & Design | 2,214,617 | Dec. 29, 1998 | Class 28:  Construction toys; parts and accessories for construction toy kits and sets; toy model train sets; vehicular toys; toy people, doll and animal play figures |
| DUPLO | 1,208,662 | Sept. 14, 1982 | Class 28:  Toys – namely, building blocks and connecting links for the same, sold separately or in kits including toy furnishings – namely, chairs, tables, closets, clocks, desks, blackboards, bells, gas pumps, windmills, doll figures, animal figures and vehicular toys – namely, cars, helicopters, boats, trucks, airplanes, vans, wagons and tractors; pull toys, tub toys |

{N1770545.1}

Printouts from the U.S. Patent and Trademark Office database reflecting the DUPLO

Registrations are attached hereto as Exhibit C.

26.     All of the DUPLO Registrations are valid, subsisting, and in full force and effect.

Moreover, Registration No. 1,208,662 is incontestable pursuant to Section 15 of the Lanham Act,

15 U.S.C. § 1065, and serves as conclusive evidence of LEGO Juris's ownership of the mark and

of its exclusive right to use the mark in commerce on or in connection with the goods identified

in the registration, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

27.     Because of the LEGO Group's exclusive and extensive use of the DUPLO mark,

the mark has acquired enormous value and has become extremely well known to the consuming

public and trade as identifying and distinguishing the LEGO Group exclusively and uniquely as

the source of products available under the mark.  The DUPLO mark has come to represent an

enormous goodwill of the LEGO Group and has caused merchandise associated with the mark to

be in great demand.

28.     Due to the extensive advertising and sales of DUPLO products and its wide

popularity, the purchasing public immediately and exclusively identifies the DUPLO mark with

the LEGO Group.

29.     The LEGO and DUPLO marks are vital to the LEGO Group, and the LEGO

Group will suffer irreparable harm if Synergy's unauthorized and unlawful conduct, described

below, is permitted to continue.

C.      Synergy's Infringing Conduct

30.     Synergy has no connection to the LEGO Group, except as a customer buying bricks, and has never been authorized to use the LEGO or DUPLO marks in connection with the unlawful conduct described below.

31.     Upon information and belief, on or about October 23, 2000, Synergy registered the domain name <legotable.com>.

32.     Upon information and belief, on or about November 22, 2000, Synergy registered the domain name <duplotable.com>.

33.     The domain name <legotable.com> incorporates Lego's famous LEGO trademark in its entirety.  The domain name <duplotable.com> incorporates Lego's DUPLO trademark in its entirety.

34.     Upon information and belief, Synergy uses the <legotable.com> and <duplotable.com> domain names to generate revenue.

35.     Sometime after registering the domain name <legotable.com>, Synergy used the domain name to post a website at http://www.legotable.com (the "Infringing Site") on which Synergy began to offer children's play tables, play cubes, activity centers and other items.

36.     Among the numerous items offered on the Infringing Site are simple tables, constructed of wood, the top surface of which is covered with studded plastic grid plates.  These tables are designed to provide a surface on which children can build with LEGO and DUPLO building blocks (the "Building Tables").

15

37.     Synergy originally promoted the Building Tables on the Infringing Site as "Lego Duplo Play Tables."  Synergy later changed the identification of these tables to "LEGO® DUPLO® Compatible Play Tables" and "LEGO® Compatible Tables."

38.     Upon information and belief, Synergy's Building Tables are unsafe and pose a hazard to children.

39.     Synergy uses LEGO Juris's LEGO and DUPLO marks to identify the different formats of its available Building Tables.  When ordering Building Tables, customers are required to "[s]pecify Lego (small grid surface) or Duplo (large grid surface) when ordering," and customers do so by selecting the "Large grid (Duplo)" or the "Small grid (Lego)" option.  Upon information and belief, Synergy's Building Tables are not manufactured with authentic LEGO or DUPLO base plates.

40.     Synergy also repeatedly uses the LEGO and DUPLO marks in the text of the Infringing Site.  Upon information and belief, Synergy repeats the LEGO and DUPLO marks to make it more likely that the Infringing Site will be a top result in Internet searches incorporating the terms LEGO and/or DUPLO, in an effort to confuse and divert consumers looking for the LEGO Group's websites and authorized products.

41.     Additionally, Synergy uses LEGO Juris's LEGO and DUPLO marks (as well as DUPO, an obvious misspelling of the DUPLO mark) as meta tags in the source code for the Infringing Site.  Because of this, the Infringing Site is more likely to be a top result in Internet Searches incorporating the terms LEGO and/or DUPLO.  Upon information and belief, Synergy uses the LEGO and DUPLO marks as meta tags in order to confuse and divert consumers looking for the LEGO Group's websites and authorized products.

{N1770545.1}

42.     By the foregoing conduct, Synergy has falsely represented that it, the Infringing Site and/or the goods promoted on the Infringing Site are legitimately connected with the LEGO Group when, in fact, they are not.

43.     Upon information and belief, since registering the domain name <duplotable.com>, Synergy has associated the domain name with a "parking" website.  That is, Synergy enrolled the <duplotable.com> domain name with commission-generating programs with search engines or search companies, so that the website associated with the domain name displays advertisements and links to other websites ("Sponsored Links").  When an Internet user clicks on a Sponsored Link, Synergy receives a commission.

44.     Upon information and belief, consumers who have reached the website associated with Synergy's <duplotable.com> domain name have been looking for products sold by or authorized by the LEGO Group.

45.     Upon information and belief, Synergy has engaged in and is continuing to engage in the above conduct willfully and deliberately, with full knowledge of LEGO Juris's prior and exclusive rights in the LEGO and DUPLO marks, and with an intent to misappropriate LEGO Juris's goodwill in the LEGO and DUPLO marks and deceive consumers into believing that Synergy and/or its goods are legitimately connected with the LEGO Group.

46.     Synergy began to engage in the above conduct long after LEGO Juris and its predecessors adopted and used the LEGO and DUPLO marks, itself and through licensees, on a wide range of goods, including play tables, and after LEGO Juris obtained the trademark registrations alleged above.  Indeed, upon information and belief, Synergy's conduct was specifically designed to trade on the LEGO Group's rights and recognition and the fame of the

{N1770545.1}

LEGO and DUPLO marks.  By its wrongful conduct, Synergy has traded upon and diminished the value of the LEGO Group's goodwill, goodwill which has been created through the LEGO Group's decades of continuous use of the LEGO and DUPLO trademarks in connection with high-quality building blocks and other products.

47.     By engaging in activities described herein, Synergy has acted in willful disregard of LEGO Juris's rights, and has confused and deceived the consuming public and the public at large.  Upon information and belief, Synergy is using LEGO Juris's LEGO and DUPLO marks in order to compete with and otherwise benefit from the recognition and goodwill of those marks and from the desirability of products associated with those marks.  As such, Synergy's activities, as described herein, appear to be precisely calculated to divert the LEGO Group's customers and to otherwise commercially benefit from the fame and goodwill of the LEGO Group's marks.

48.     Synergy's activities, as described herein, are likely to injure the LEGO Group's goodwill and reputation.  Synergy's use of the LEGO and DUPLO marks unfairly and unlawfully wrests from the LEGO Group control over its trademarks and reputations.  LEGO Juris has no control over the quality of Synergy's products, which, upon information and belief, are inferior to the products the LEGO Group sells under its marks.  As a result, the LEGO Group's extremely valuable reputation may be permanently damaged.  If Synergy's conduct is not enjoined, it will greatly injure the value of the LEGO and DUPLO marks to LEGO Juris and the ability of those marks to indicate goods emanating from the LEGO Group.

49.     Synergy's activities described herein have caused and will continue to cause irreparable damage to the business and goodwill of the LEGO Group unless permanently restrained by this Court.

{N1770545.1}

50.     LEGO Juris has no adequate remedy of law.

## FIRST CLAIM FOR RELIEF FOR
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

51.     LEGO Juris repeats and realleges paragraphs 1 through 50 above as if fully set

forth herein.

52.     Synergy's activities as described herein are likely to cause confusion, or to cause

mistake or to deceive Synergy's customers or potential consumers and the public as to the source

or sponsorship of Synergy's goods.  Consumers are likely to be misled into believing that

Synergy's products were manufactured by, licensed by, sponsored by or otherwise approved by

the LEGO Group, and that the websites associated with Synergy's <legotable.com> and

<duplotable.com> domain names are licensed by, sponsored by or otherwise approved by the

LEGO Group.

53.     Upon information and belief, Synergy was on both actual and constructive notice

of LEGO Juris's exclusive rights in the LEGO and DUPLO marks, which are registered and

incontestable.  Synergy's use of the LEGO and DUPLO marks is willful, in bad faith, and with

full knowledge of the LEGO Juris's prior use of, exclusive rights in and ownership of those

marks, with full knowledge of the goodwill and reputation associated with those marks, and with

full knowledge that Synergy has no right, license or authority to use those marks or any other

mark confusingly similar thereto.

54.     Synergy's acts are intended to reap the benefit of the goodwill that LEGO Juris

has created in the LEGO and DUPLO marks and constitute infringement of LEGO Juris's

19

federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Synergy's conduct has caused and is causing immediate and irreparable injury to LEGO Juris and will continue both to damage LEGO Juris and to deceive the public unless enjoined by this Court.  LEGO Juris has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF FOR**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

56.     LEGO Juris repeats and realleges paragraphs 1 through 55 above as if fully set forth herein.

57.     Synergy's activities as described herein are likely to cause confusion, mistake, or deception as to the source of Synergy's goods and are likely to create the false impression that Synergy is affiliated with the LEGO Group or that its goods are authorized, sponsored, endorsed, licensed by, or affiliated with the LEGO Group.  Synergy's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Synergy's conduct has caused and is causing immediate and irreparable injury to LEGO Juris and will continue both to damage LEGO Juris and to deceive the public unless enjoined by this Court.  LEGO Juris has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF FOR**
**FEDERAL DILUTION (15 U.S.C. §1125(c)(1))**

59.     LEGO Juris repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

{N1770545.1}

60.     LEGO Juris's LEGO mark is a distinctive and famous mark that is widely recognized by the general consuming public of the United States as a designation of source of the LEGO Group's goods.

61.     Synergy's unauthorized commercial use of the LEGO mark in connection with goods not controlled by LEGO Juris commenced long after the LEGO mark had been federally registered and had become famous.

62.     Synergy's use of the LEGO mark in connection with its products is likely to impair the distinctive quality of the LEGO mark by lessening the capacity of that mark to identify and distinguish genuine products of the LEGO Group or to identify and distinguish the LEGO Group exclusively as the source of goods bearing or provided under the mark, in violation of 15 U.S.C. § 1125(c).

63.     Synergy's use of the LEGO mark for its own commercial business purposes is intended to and has the effect of trading on the LEGO Group's reputation and causing dilution of the LEGO mark.

64.     Upon information and belief, Synergy does not own any federal or state trademark registrations for any mark that includes, in whole or in part, the LEGO mark and cannot assert any rights in the LEGO mark that are prior to the LEGO Juris's rights.

65.     Synergy's foregoing conduct is causing LEGO Juris irreparable injury.  LEGO Juris has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF FOR
FEDERAL CYBERSQUATTING (15 U.S.C. § 1125(d))**

66.     LEGO Juris repeats and realleges each and every allegation set forth in paragraphs

21

1 through 65 hereof.

67.     Synergy has registered, trafficked in and/or used, or caused to be registered,

trafficked in and/or used, the domain names <legotable.com> and <duplotable.com> (together,

the "Infringing Domain Names"), which are confusingly similar to and/or dilutive of the LEGO

and DUPLO marks, with full knowledge of the LEGO Group's rights in the LEGO and DUPLO

marks, and with a bad faith intent to profit from the LEGO and DUPLO marks.  The aforesaid

acts and conduct of Synergy take advantage of the fame and goodwill of the LEGO and DUPLO

marks in violation of the Anticybersquatting Consumer Protection Act, Section 43(d) of the

Lanham Act, 15 U.S.C. § 1125(d).

68.     Synergy is not authorized to use either the LEGO or DUPLO mark or any similar

mark in or as part of any domain name.

69.     Synergy's continued ownership and maintenance of the Infringing Domain Names

has caused and will continue to cause irreparable harm to LEGO Juris unless the Court orders the

forfeiture or cancellation of the Infringing Domain Names or transfer of the Infringing Domain

Names to LEGO Juris.  LEGO Juris has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF FOR
## UNFAIR COMPETITION UNDER LOUISIANA STATE LAW
### (La. Rev. Stat. § 51:1405(A))

70.     Plaintiff repeats and realleges paragraphs 1 through 69 above as if fully set forth

herein.

71.     Synergy's activities as described herein are likely to cause confusion, mistake, or

deception as to the source of Synergy's goods and are likely to create the false impression that

{N1770545.1}

Synergy is affiliated with the LEGO Group or that its goods are authorized, sponsored, endorsed, licensed by, or affiliated with the LEGO Group.  Synergy's actions constitute unfair competition in violation of Section 51:1405(A) of the Louisiana Revised Statues.

72.     Synergy's conduct has caused and is causing immediate and irreparable injury to LEGO Juris and will continue both to damage LEGO Juris and to deceive the public unless enjoined by this Court.  LEGO Juris has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF FOR
## DILUTION UNDER LOUISIANA STATE LAW
## (La. Rev. Stat. § 51:223.1)

73.     LEGO Juris repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     LEGO Juris's LEGO and DUPLO marks are distinctive and among the most well-known marks in the country.  The marks are clearly identified with the LEGO Group's goods and are immediately recognizable to consumers as signifying the goods of the LEGO Group exclusively.

75.     Synergy's unauthorized use of the LEGO and DUPLO marks is diluting and is likely to continue diluting those marks by blurring the distinctiveness thereof and is likely to injure and has injured the LEGO Group's business reputation in that the LEGO Group's reputation has been removed from its power and control and any deficiencies or complaints about Synergy's products will redound to the harm of the LEGO Group, all in violation of § 5l:223.1 of the Revised Statutes of the State of Louisiana.

76.     The foregoing conduct is causing LEGO Juris irreparable injury.  LEGO Juris has

{N1770545.1}

no adequate remedy at law.

WHEREFORE, LEGO Juris A/S respectfully demands judgment as follows:

1)  That a permanent injunction be issued enjoining Synergy, and any of its respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by Synergy, from:

> (a) Using either the LEGO or DUPLO mark (together, "LEGO Juris's Marks"), or any simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of LEGO Juris's Marks in or as part of a design, logo, domain name or trademark or otherwise using such a mark in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production or distribution of any business, product or service;

> (b) manufacturing, packaging and transporting any unauthorized product bearing any of LEGO Juris's Marks or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of LEGO Juris's Marks;

> (c) selling, offering, distributing, disseminating or otherwise providing any product that bears any of LEGO Juris's Marks, or any mark that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of LEGO Juris's Marks;

24

(d)  using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Synergy is associated with LEGO Juris or that any product imported, manufactured, distributed, or sold by Synergy is in any manner associated or connected with LEGO Juris, or is authorized, licensed, sponsored or otherwise approved by LEGO Juris;

(e)  purchasing any of LEGO Juris's Marks in connection with any sponsored advertising on the Internet or using any of LEGO Juris's Marks in any source code or otherwise using LEGO Juris's Marks such that a search for LEGO or DUPLO on the Internet will cause any domain name or website of Synergy to appear in search results;

(f)  using or registering any of LEGO Juris's Marks as part of any domain name, regardless of cctld or gtld;

(g)  engaging in any other activity constituting unfair competition with LEGO Juris, or constituting an infringement of any of LEGO Juris's Marks;

(h)  diluting or tarnishing any of LEGO Juris's Marks;

(i)  applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of any of LEGO Juris's Marks or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of LEGO Juris's Marks; and

25

{N1770545.1}

(j)  assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above.

2)  Directing that Synergy transfer the Infringing Domain Names to LEGO Juris and execute all necessary documents to effectuate such transfer.

3)  Directing such other relief as the Court may deem appropriate to (a) prevent the public from deriving the erroneous impression that any product manufactured, sold or otherwise circulated or promoted by Synergy within the United States is authorized by LEGO Juris or related in any way to LEGO Juris or that Synergy is otherwise affiliated with LEGO Juris, and (b) prevent Synergy from registering or using any domain names that incorporate or are confusingly similar to LEGO Juris's Marks.

4)  Directing that Synergy file with the Court and serve upon LEGO Juris's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

5)  Awarding LEGO Juris Synergy's profits pursuant to 15 U.S.C. § 1117(a).

6)  Awarding LEGO Juris its actual damages, trebled, pursuant to 15 U.S.C. § 1117(a).

7)  At LEGO Juris's election, awarding LEGO Juris statutory damages in the amount of $100,000 per Infringing Domain Name pursuant to 15 U.S.C. § 1117(d).

8)  Awarding to LEGO Juris exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

9)  Awarding to LEGO Juris its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

{N1770545.1}

10) Awarding to LEGO Juris interest, including pre-judgment interest on the foregoing sums.

11) Awarding to Lego such other and further relief as the Court may deem just and proper.

Respectfully submitted,

__/s/ Emily E. Eagan_____
Harry S. Hardin, III  (#6540)
Emily E. Eagan  (#29166)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre
201 St. Charles Ave.
New Orleans, LA   70170-5100

Attorneys for Lego Juris A/S

Of Counsel:

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

John P. Margiotta
Evan Gourvitz
Laura E. Popp
866 United Nations Plaza
New York, NY 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901

27

{N1770545.1}

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2008, a true and correct copy of the

foregoing Answer and Counterclaims was sent by first class mail to Plaintiff's counsel:

| | |
|---|---|
| Terrence J. Lestelle, Esq. | Brett E. Lewis, Esq. |
| LESTELLE & LESTELLE | LEWIS & HAND, LLP |
| 3421 N. Causeway Blvd. Suite 602 | 45 Main Street, Suite 818 |
| Mateirie, Louisiana 70002 | Brooklyn, NY 11201 |

_____/s/ Emily E. Eagan_____
Emily E. Eagan

{N1770545.1}